**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alison Gordon & David Gordon** | ) | **CASE NO. 5:09 CV 1506** |
| | ) | |
| **Appellants,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **David Wehrle, Liquidation Trustee,** | ) | **Memorandum of Opinion and Order** |
| **successor in interest to the Official** | ) | |
| **Committee of Unsecured Creditors** | ) | |
| | ) | |
| **Appellee.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Alison Gordon's and David Gordon's Appeal of the

May 19, 2009 Orders of the Bankruptcy Court (Doc. 8); Liquidation Trustee David Wehrle's

Motion to Dismiss Alison and David Gordon's Appeal of the May 19, 2009 Orders of the

Bankruptcy Court (Doc. 10); and Liquidation Trustee's Motion to Strike Appellants' *Ex Parte*

Communication with the Court (Doc. 17).  For the reasons that follow, the Liquidation Trustee's

Motion to Dismiss the appeal is DENIED; the Liquidation Trustee's Motion to Strike is

DENIED; and the Court AFFIRMS the judgment of the Bankruptcy Court.

1

## FACTS

Appellants, siblings Alison Gordon and David Gordon, bring this bankruptcy appeal against appellee, David Wehrle, Liquidation Trustee and successor in interest to the Official Committee of Unsecured Creditors.  Appellants specifically appeal the Bankruptcy Court's order granting appellee's Motion to Strike Reply Brief and denying appellants' Motion to File New Claim.  The Bankruptcy Court ruled on both motions during a May 12, 2009 hearing and issued a written memorandum of its rulings on May 19, 2009.  This bankruptcy appeal arises from the voluntary Chapter 11 filings of Darlington Nursing & Rehabilitation Center, Ltd. (hereinafter "Darlington") and Dani Family, Ltd. (hereinafter "Dani").[1]  The Bankruptcy Court established July 1, 2008 as the bar date to file a proof of claim in these cases.

Appellants filed a proof of claim estimated at $2,142,200 against Darlington on June 26, 2008.  The claim was supported by an attached two-page agreement between Sally and Abraham Schwartz and appellants (hereinafter the "Agreement") dated July 27, 2000.  Appellants executed the Agreement by the signature of Gertrude Gordon, appellants' mother, who held power of attorney.  The Agreement essentially describes a $1,000,000 investment in Darlington, to be returned to appellants on or before July 25, 2002, in exchange for a 10% cumulative interest while the $1,000,000 is invested, a 10% equity ownership (5% to each appellant), and 10% of the annual profit.  Other terms and conditions apply.  The Agreement is signed

---

[1] The Bankruptcy Court consolidated Darlington's case with the following voluntary Chapter 11 cases for administrative purposes:  Royal Manor Management Inc., Willow Park Convalescent Home, Inc., Blossom Nursing & Rehabilitation Center, Inc., and AMDD, Inc.  The following related entities also filed voluntary Chapter 11 petitions: Austinburg Properties, Ltd., Willow Interests, LLC, 138 Mazal Health Care, Ltd., Broadway Care Center of Maple Heights LLC, and Brian Family Ltd.

personally by Sally and Abraham Schwartz and does not indicate that it was entered into on behalf of Darlington.

The Official Committee of Unsecured Creditors (hereinafter "the Committee"), to whom the appellee is successor in interest, objected to the claim on September 5, 2008.  The Committee provided the following grounds for objection: (i) the claim constitutes an equity investment, not a loan, and is therefore not subject to repayment; (ii) assuming without conceding that the claim relates to a loan rather than an equity investment, the loan was made solely to Sally Schwartz and Abraham Schwartz in their individual capacities and is therefore not a debt of the debtor's estate; (iii) the claim is not supported by appropriate documentation to establish that it is a secured claim because there was no security agreement or UCC filing offered in its support; (iv) assuming without conceding that the claim relates to a loan rather than an equity investment, the claim must be subordinated to other claims per Section 510(b) of the Bankruptcy Code; and (v) there is inadequate documentation of the money still allegedly owed.  The Bankruptcy Court sustained the objection; however, appellants filed a Motion to Vacate the objection arguing they had not received notice of it.  The Motion to Vacate was eventually resolved by agreement.  In the meantime, on January 13, 2009, appellants filed a Motion to Amend the claim to state it with greater particularity and to add a claim for unpaid dividends.

During discovery and after January 13, 2009, appellants claim they became aware for the first time of operating agreements for Dani[2] and Darlington on which appellants' signatures are

---

[2]        Dani and Darlington are related companies, apparently treated as a single entity.  Dani owned the real estate upon which Darlington, a nursing home, was located.

3

forged.[3]  The Dani operating agreement describes appellants' $1 million transfer as an initial capital contribution and classifies appellants as priority members.  The Dani operating agreement also provides for repayment of capital contributions to priority members in increments of 10% of the members' contributions over a certain period of time until the capital contributions are reduced to zero.  If Dani is unable to make the priority payments, the payments would accrue as a debt to the priority members.  On March 17, 2009, based on the discovery of the operating agreements,[4] appellants filed a Motion to File New Claim for rescission, unjust enrichment, and/or an alternative claim that the operating agreement converted 10% of appellants' equity into a loan every year.

The Bankruptcy Court established a briefing schedule for the Motion to File New Claim and set May 12, 2009 as the hearing date for both the Motion to Amend and the Motion to File New Claim.  The briefing schedule required appellants' Reply Brief on the Motion to File New Claim (hereinafter "Reply  Brief") to be filed no later than April 13, 2009.  This date was later extended with appellee's agreement to April 14, 2009.  Appellants did not file the Reply Brief until April 15 and then amended the Reply Brief with supporting declarations on April 16, 2009.  Appellee moved to strike the Reply Brief as untimely.  During the May 12, 2009 hearing, the Bankruptcy Court granted appellee's Motion to Strike appellants' Reply Brief on the Motion to File New Claim, and denied the Motion to Amend and the Motion to File New Claim.  The Bankruptcy Court also set June 30, 2009 as the hearing date for appellants' original claim.

_____

[3]    Appellee has stipulated that the signatures appearing on the Dani and Darlington operating agreements are not appellants' actual signatures.

[4]    Appellants' only mention of the Darlington operating agreement is that their signatures which appear on it are forged.

4

Appellants appeal the Bankruptcy Court's order granting appellee's Motion to Strike and denying the Motion to File New Claim, arguing the Bankruptcy Court abused its discretion. Appellee moves to dismiss the appeal, arguing that the Bankruptcy Court's order granting the Motion to Strike and denying the Motion to File New Claim is not a final appealable order under 28 U.S.C. § 158(a)(1) and thus this Court has no jurisdiction.  Appellants oppose the motion. Separately from their Brief in Opposition and without filing it on the record, appellants sent to this Court a binder of tabbed documents purporting to be the exhibits to the Brief in Opposition, along with a cover letter.  Appellee moves to strike the letter and the binder as an *ex parte* communication with the Court.

**STANDARD OF REVIEW**

The parties state that the abuse of discretion standard applies to the Court's review of the Bankruptcy Court's order granting the Motion to Strike Reply Brief and denying the Motion to File New Claim.  The Court agrees.  *See McMillan v. LTV Steel Co.,* No.1:06CV00850, 2007 U.S. Dist. LEXIS 71621, at *35 (Sept. 26, 2007 N.D. Ohio) (noting that a bankruptcy court has broad discretion in determining whether to reconsider the disallowance of a claim).  *See also Butler v. Ormet Corp.,* No. 2:08CV973, 2009 U.S. Dist. LEXIS 5770, at *5-6 (Jan. 13, 2009 S.D. Ohio) (applying abuse of discretion standard to appeal of order denying motion to allow creditor's claim based on newly discovered evidence and clerical mistake).  An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made.  A court "abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard."  *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir. 1995).

5

## ANALYSIS

**A.      Motion to Dismiss**

District courts have jurisdiction to hear appeals from final orders of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  In bankruptcy, finality is considered in "a more pragmatic and less technical way" than in non-bankruptcy cases.  *Lindsey v. O'Brien, Tanski, Tanzer, and Young Health Care Providers of Connecticut (In re Dow Corning Corp.),* 86 F.3d 482, 488 (6th Cir. 1996) (citing *In re Cottrell,* 876 F.2d 540, 541-42 (6th Cir. 1989)).  The reason for this "functional and practical" application of finality is that:

> Bankruptcy cases frequently involve protracted proceedings with many parties participating.  To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*Id.* (quoting *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1009 (4th Cir. 1985)).  Thus, "where an order in a bankruptcy case 'finally disposes of concrete disputes within the larger case,' it may be appealed immediately."  *Id.* (quoting *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir. 1983)).  To finally dispose of concrete disputes within a larger case, "a bankruptcy order need not resolve all of the issues in the proceeding, but it must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding."  *WCI Steel v. Wilmington Trust Co.,* 338 B.R. 1, 8 (N.D. Ohio 2005) (quoting *In re Perry,* 391 F.3d 282, 285 (1st Cir. 2004)). *See also In re Rimsat, Ltd.,* 212 F.3d 1039, 1044 (7th Cir. 2000) ("Where an order terminates a discrete dispute that, but for the bankruptcy, would be a stand-alone suit by or against the trustee, the order will be considered final and appealable.").

Appellee argues that the discrete dispute in this case is whether appellants are general

6

unsecured creditors in the bankruptcy proceedings.  Because the Bankruptcy Court's order on the Motion to Strike and the Motion to File a New Claim did not resolve this question, appellee argues that the order is not appealable.

Upon review, the Court finds that appellee's motion to dismiss must be denied.  The Bankruptcy Court entered a memorandum opinion on October 1, 2009 denying appellants' claim, which the Bankruptcy Court heard on June 30, 2009.  This ruling resolved all disputes in the bankruptcy case involving appellants.  Although the May 19, 2009 order was not a final appealable order when appellants filed their notice of appeal, the Sixth Circuit has held that "an appeal should not be dismissed because it was technically premature if in fact an appealable judgment or order was rendered below, the appellant clearly manifested his intent to appeal from it and the prevailing party below can show no prejudice resulting from the prematurity of the notice."  *SEC v. Basic Energy & Affiliated Res., Inc.,* 273 F.3d 657, 665 (6th Cir. 2001) (citing *Jackson v. TVA,* 595 F.2d 1120, 1121 (6th Cir. 1979)).  Because the October 1 decision of the Bankruptcy Court is a final appealable order, the Court now has jurisdiction over appellants' appeal of the May 19, 2009 order.  Appellee's Motion to Dismiss Appeal is, therefore, denied.

**B.      Motion to Strike**

Appellee moves to strike a cover letter and a binder of tabbed documents appellants sent to the Court, which appellants claim represent the exhibits to their Brief in Opposition to appellee's Motion to Dismiss.  Appellee argues that the letter and the binder constitute an *ex parte* communication with the Court.  Appellants argue that it is not an ex parte communication because appellants provided a copy of the same documents to appellee.  The Court notes that unless documents are filed on the record, appellee and the Court have no way of knowing

7

whether the documents they received are in fact the same.  Regardless, as the letter and the binder were never filed with the Court, those specific documents are not part of the record before the Court and cannot be stricken.  Because the documents are not part of the record, the Court considered neither the letter nor the binder of tabbed documents in reaching its decision on the Motion to Dismiss and examined only the documents designated on the record for the appeal.

**C.      Appeal**

Appellants present three issues on appeal.

> **1.      Did the Bankruptcy Court abuse its discretion in summarily denying appellants' motion to file a new claim, where the Bankruptcy Court failed to give a reason for its summary denial, and its order merely recited "DENIED"?**

Appellants argue that the Bankruptcy Court abused its discretion in denying appellants' Motion to File New Claim because the Bankruptcy Court did not articulate its reasoning for the denial.  Upon review, the Court finds that appellants are blatantly mischaracterizing the record. The transcript of the May 12, 2009 hearing during which the Bankruptcy Court considered appellants' Motion to File New Claim shows that the Bankruptcy Court explained that its reason for denying the motion was that the so-called "new claim" was not a new claim, but only a different theory of recovery on the original $1 million transaction:

> THE COURT:          Mr. Grossman, your clients are seeking the return of funds or a dividend based upon the return of funds.  Your clients are seeking a dividend in this case based upon monies that changed hands in June of 2000, circumstances of which are the central issue in this case.  The request to file a, quote, new claim, why is it necessary?  You have been given great latitude in terms of advancing various theories in support of your client's desire to participate as general unsecured creditors in this case.  I have indicated that while the issue of timeliness of your client's response to the objection is still an issue in this case, it's a dormant issue but it is an

8

                          issue.  Why– why should I change that dynamic?  I am allowing you to advance whatever theories you're going to advance but why is that not appropriate under– as you go forward under the claim that was filed by your client with respect to monies advanced, monies that changed hands in June of 2000?  That's still what we're talking about correct?

MR. GROSSMAN:     Yes.  The reason why, Your Honor, is because the standard for a new claim versus amended claims is is there anything in the document or the underlying claim or the documents on which the underlying claim was filed which gives a reasonable indication as to the basis for what might be termed a new or amended claim.  If it's based on the same document or if there's something in that original document which would give the parties reasonable notice of a basis for yet a further claim, that's what's deemed to be an amended claim.  On the other hand, if there's nothing whatsoever in the original claim documents which gives any indication or foreseeability of a basis for a new theory or a new basis for a claim, then it's a new claim.  It's not an amended claim.  And there's no doubt here that there's absolutely nothing in the underlying document that Ms. Gordon filed back in June 2008 as the original claim which would even begin to give any indication of forgeries or Dani family operating agreements or the terms of those agreements.

THE COURT:     Mr. Grossman, is it your contention that your client would be entitled to, if both claims were allowed, that your client would be entitled to a double distribution?

MR. GROSSMAN:     Absolutely not.  Indeed, under--

THE COURT:     So it's a single claim?

MR. GROSSMAN:     It's a single claim.  We have committed from the outset that because of the issue of reliance and in order to eliminate any argument of prejudice to anybody, we have committed throughout that under no circumstances will we seek as a claim any amount in excess of the dollar value of the original claim figure filed by Ms. Gordon timely back in June 2008.

(May 12, 2009 Transcript (hereinafter "Tr.") 58:9-60:14).  The Bankruptcy Court then turned to

9

counsel for the trustee, who responds that the operating agreements are irrelevant, and even if the

operating agreements were relevant appellants as equity holders would be subordinated to

general unsecured creditors.  The Bankruptcy Court allowed counsel for appellants to respond:

> MR. GROSSMAN:    Right.  That does not apply to our unjust enrichment claim.
> The March 17th motion is to add a new claim based upon
> theories of rescission.  And the reason we're asserting
> rescission is because rescission logically comes first.
> Given the fact that the forgeries and given the
> concealments that occurred, and it seems to be undisputed
> because there's no contrary evidence.  But given all that,
> logically the rescission claim goes forward, because the
> Ohio legal rate of interest is lower than the contract rate of
> interest, actually, the amount of the Gordon claim is
> reduced.  Gertrude Gordon filed her original claim for $2.1
> million.  The rescission claim, based on rescission of the
> loan, instead of being 2.1 is approximately $1.7 million.
>
> THE COURT:    It's a different theory in support of your client's desire to
> participate in this case based upon the two– based upon the
> money that changed hands in the summer of 2000; is that
> correct?
>
> MR. GORDON:    It's not– it's a different theory, but in addition to that, it's a
> whole different set of documents and a different set of
> circumstances, none of which could have been foreseen
> from the underlying documents which were part of the
> original claim.  It was a totally surprise matter to everyone
> when those operating agreements were produced and the
> forgeries were revealed . . . .

(Tr. 62:16-63:2.)  After hearing from the trustee's counsel a final time, the Bankruptcy Court

stated:

> THE COURT:    Well, the Court is going to deny the motion to allow the
> filing of a new claim.  The development of whatever rights
> the Gordons may have to participate as creditors, whatever
> else, they are not being denied due process.  They're
> getting a lot of process.  And so we will proceed with their
> rights and with whatever facts have been developed in
> discovery but there will not be a claim other than the claim

that was filed in June of 2008 that will be addressed.  The various theories can be addressed but there will not be a separate claim.

(Tr. 64:5-15.)  Further, the Bankruptcy Court reiterated later in the hearing that no new claim existed:  "In reviewing the papers that have been filed by Mr. Grossman on [appellants'] behalf I have yet to see a theory that doesn't trace back to the original exchange of funds that occurred in the summer of 2000."  (Tr. 66:14-18.)  The Court finds it inconceivable that appellants would characterize such a detailed discussion as a "summary denial" and would seriously argue that the "sole substance" of the Bankruptcy Court's May 19, 2009 order was the single word "denied," when the above discussion took place on the record at the May 12 hearing.  The Court finds that the Bankruptcy Court properly articulated the basis for its order denying appellants' Motion to File New Claim.

> **2.** **Did the Bankruptcy Court abuse its discretion in denying appellants' motion to file a new claim after the bar date where the bankruptcy case was still open and being administered, the debtors concealed the bases for appellants' new claim until after the bar date during discovery in this case, the rules and case law support the granting of appellants motion after the bar date where the debtors concealed the bases for the new claim, appellants moved promptly thereafter to file their new claim without undue delay, there would be no prejudice to anyone in granting the motion, there would be no disruption or impairment of the confirmed Chapter 11 plan in granting the motion, the new claims were not futile, and appellants' new claims could have been tried simultaneously without delaying the bankruptcy case by a single day?**

The questions appellants raise in their second issue for appeal are not the bases upon which the Bankruptcy Court denied their Motion to File New Claim.  The Bankruptcy Court, as discussed above, found that the so-called "new claim" was not a new claim but simply another theory of recovery under the original $1 million transaction for which appellants filed a proof of claim.  Even counsel for appellants admitted that it was a single claim under which appellants

11

would be entitled to a single recovery if they were entitled to anything at all.  The Bankruptcy Court never addressed timeliness or prejudice in denying the motion.  Moreover, the Bankruptcy Court *specifically* invited appellants to present these new theories at the trial of the original claim– essentially, appellants *won* the right to present the new theories of recovery to the Bankruptcy Court and then inexplicably appealed the Bankruptcy Court's decision.  The Court finds that the Bankruptcy Court did not abuse its discretion in denying appellants' Motion to File a New Claim.[5]

> **3.    Did the Bankruptcy Court abuse its discretion in striking appellants' reply papers on the motion, where the reply papers were delayed by a mere 2 days because of an unavoidable computer glitch which prevented appellants' counsel from opening, accessing, or transmitting the reply documents for e-filing on the deadline day, appellants' counsel consistently met every other deadline in this case, and there was no prejudice to anyone in this single 2-day delay?**

The Bankruptcy Court granted appellee's Motion to Strike Reply Brief because it was filed two days late.  (Tr. 28:22.)  The Bankruptcy Court established a deadline for appellants to file their Reply Brief, which appellants failed to meet.  Appellants also failed to seek leave of court to file a late brief, and failed to abide by Rule 12 of the Electronic Filing Policies and Procedures Manual requiring appellants to notify the Court's electronic filing help desk if

---

[5]    To the extent that appellants are appealing the Bankruptcy Court's determination that the "new claim" was not a new claim, but only another theory of recovery under the existing claim– an argument that appellants fail to articulate– the Court finds that the claim is not a new claim.  *In re Bondi's Valu-King, Inc.,* 124 B.R. 47, 49 (N.D. Ohio 1991) (claim is not a new claim if it bears a reasonable relationship to the original filing, and the original filing that provides notice to the debtor of the existence, nature, and amount of subsequent claims to be submitted by the creditor).  Appellants' $1 million transfer to the Schwartzes is the only basis for any claim that appellants can assert, regardless of the theory under which it is asserted.  The original proof of claim provided sufficient notice to debtor of all theories of recovery appellants desired to assert, and the Bankruptcy Court gave leave to appellants to present all of those theories.

12

appellants were having problems filing documents electronically.  Instead, appellants simply filed the brief late.  Upon review of these circumstances, the Court finds that the Bankruptcy Court did not abuse its discretion in striking appellants' Reply Brief.[6]

**CONCLUSION**

For the foregoing reasons, Liquidation Trustee David Wehrle's Motion to Dismiss Alison and David Gordon's Appeal of the May 19, 2009 Orders of the Bankruptcy Court is DENIED; Liquidation Trustee's Motion to Strike Appellants' *Ex Parte* Communication with the Court is DENIED; and the May 19, 2009 Order of the Bankruptcy Court granting appellee's Motion to Strike Reply Brief and denying appellants' Motion to File New Claim is hereby AFFIRMED.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/16/09

---

[6]     Appellants have also appealed the October 1, 2009 order of the Bankruptcy Court denying their original claim.  In their response to appellee's notice of supplemental authority, appellants make an "administrative proposal" that the Court consolidate the appeals and coordinate the briefing, noting that a reversal of the Bankruptcy Court on the original claim would moot all issues concerning the new claim and would remove the need for this Court to "address the new claim."  The Court rejects this proposal.  Appellants must proceed separately on each appeal; if they wanted to proceed on a consolidated basis they should have waited to file the appeal until the Bankruptcy Court determined the original claim.

13