UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Alison Gordon, et al.,** | ) | **CASE NOS.** 5:09 CV 2687 and |
| | ) | 5:09 CV 1506 |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **David Wehrle, Liquidation Trustee,** | ) | **Memorandum of Opinion and Order** |
| **Successor-in-Interest to Official** | ) | |
| **Committee of Unsecured Creditors,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon attorney Dennis Grossman's Opposition to Appellee's Motion to Deny *Pro Hac Vice* Admission; and Cross Motion to Grant *Pro Hac Vice* Admission (Doc. 7 in Case No. 5:09 CV 2687),[1] and upon the Liquidation Trustee's Motion for

---

[1] Appellee filed Liquidation Trustee's Brief in Opposition to Admission of Dennis Grossman, Esq./Brief in Opposition to Admission *Pro Hac Vice* (Doc. 6) *prior* to Grossman moving for admission *pro hac vice*, which Grossman characterized as a motion to deny admission *pro hac vice*. The Court will treat appellee's brief as a brief in opposition to Grossman's motion for admission *pro hac vice*. Further, as Grossman has not moved for admission to practice before the Court other than moving for admission *pro hac vice*, the

1

Sanctions Pursuant to Fed. R. Bankr. P. 8020, 28 U.S.C. § 1927 and Court's Inherent Power Against Dennis Grossman, Esq. (Doc. 30 in Case No. 5:09 CV 1506). This is an appeal from the Bankruptcy Court. For the following reasons, the Cross Motion to Grant *Pro Hac Vice* Admission is DENIED and the Motion for Sanctions is DENIED.

**FACTS**

Appellants, siblings Alison Gordon and David Gordon (hereinafter "the Gordons"), bring this bankruptcy appeal against appellee, David Wehrle, Liquidation Trustee and successor in interest to the Official Committee of Unsecured Creditors. Appellants appeal the Bankruptcy Court's denial of their claim. This bankruptcy appeal arises from the voluntary Chapter 11 filings of Darlington Nursing & Rehabilitation Center, Ltd. and Dani Family, Ltd.[2] Dennis Grossman (hereinafter "Grossman") represented the Gordons. Grossman, a member of the New York and Florida state bars, was admitted *pro hac vice* to the Bankruptcy Court in the Northern District Ohio pursuant to its Local Rule 2090-1. When the Gordons appealed the May 19, 2009 order of the Bankruptcy Court denying their motion to file a new claim ("the first appeal"), Grossman applied for and was granted admission *pro hac vice* to this Court pursuant to Local Rule 83.5(h) for the purpose of representing the Gordons in their appeal. The Court affirmed the Bankruptcy Court's order on October 16, 2009.

---

Court declines to rule on that issue.

[2] The Bankruptcy Court consolidated Darlington's case with the following voluntary Chapter 11 cases for administrative purposes: Royal Manor Management Inc., Willow Park Convalescent Home, Inc., Blossom Nursing & Rehabilitation Center, Inc., and AMDD, Inc. The following related entities also filed voluntary Chapter 11 petitions: Austinburg Properties, Ltd., Willow Interests, LLC, 138 Mazal Health Care, Ltd., Broadway Care Center of Maple Heights LLC, and Brian Family Ltd.

The Bankruptcy Court held an evidentiary hearing on the merits of the Gordons' existing claim on June 30, 2009, and denied the claim on September 30, 2009.  In the Bankruptcy Court's order, it invited appellee to pursue sanctions against Grossman and the Gordons for their conduct during the proceedings.  Appellee filed a motion for sanctions and Grossman subsequently filed a motion to disqualify Judge Shea-Stonum from ruling on the motion and asked that the case be reassigned to a judge outside of the Northern District of Ohio.  These motions are currently pending before the Bankruptcy Court.

The Gordons filed the instant appeal from the Bankruptcy Court's September 30 decision on November 17, 2009, and Grossman now moves for admission pro hac vice to represent the Gordons in this appeal.  Appellee opposes the motion, arguing that Grossman's behavior does not meet the standards of conduct expected of attorneys who practice in this District.  Appellee also moves for sanctions against Grossman for the first appeal.  Additional facts are set forth below.

## ANALYSIS

**A.     Cross Motion to Grant *Pro Hac Vice* Admission in Case No. 5:09 CV 2687**

An attorney who is not admitted to practice in the Northern District of Ohio may request permission to appear and participate in a particular case.  Local Rule 83.5(h).  The decision to permit an out-of-state attorney to practice in the Northern District of Ohio is committed to the sound discretion of the trial judge.  *D.H. Overmeyer, Co., Inc., v. First Nat'l Bank of Boston,* 750 F.2d 31, 33 (6th Cir. 1984) (affirming the lower court's decision to deny *pro hac vice* admission to an attorney upon some evidence of ethical violations).  Admission to the bar is a privilege, not a right, and all attorneys admitted to practice in the Northern District of Ohio, including those

3

admitted pursuant to Local Rule 83.5(h), are subject to the Ohio Rules of Professional Conduct. Local Rule 83.5(b); *Ross v. Reda,* 510 F.2d 1172, 1172 (6th Cir. 1975) (affirming lower court's denial of *pro hac vice* status to petitioner's out of state attorney for violations of the Ohio Canon of Ethics).  A court may deny an attorney permission to appear and participate in a particular case if the court finds some evidence that the attorney has engaged in unethical behavior.  *D.H. Overmeyer,* 750 F.2d at 33.  The Supreme Court has stated that the "[t]he power [to deny an attorney the right to practice before the bar] is one which ought to be exercised with great caution, but which is, we think, incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession."  *Ex parte Burr,* 22 U.S. 529, 531 (1824).

Appellee argues that Grossman has failed to exhibit the professional standards and ethical conduct that would support his admission to practice before this Court.  Specifically, appellee argues that Grossman violated Section 5 of the Preamble and Rule 3.1 of the Ohio Rules of Professional Conduct by improperly pursuing the Gordons' first appeal; he has attacked the integrity of the Bankruptcy Court and the integrity of all judges in the Northern District in violation of Section 5 of the Preamble and Rules 3.5(a)(6) and 8.2(a); and Grossman has placed his honesty and integrity at issue by filing briefs containing statements that misrepresented court proceedings in violation of Rule 3.3(a)(1).

Grossman responds that appellee's claim that he improperly pursued the first appeal is baseless, his misrepresentation regarding court proceedings was in good faith, and appellee's statements that Grossman made personal attacks against the Bankruptcy Court are "blatantly false."  Grossman further argues that denying his motion to appear *pro hac vice* would cause extreme prejudice and hardship to his clients, and that appellee has essentially waived his

arguments by not raising them in opposition to Grossman's prior motion for admission *pro hac vice* in the Gordons' first appeal.

Upon review, the Court agrees with appellee. For the following reasons, Grossman's conduct in the underlying bankruptcy case and in the two appeals before this Court warrants denying his motion to appear *pro hac vice* in this case.

Most troubling in the Court's view are Grossman's factual misstatements relating to the May 12, 2009 hearing before the Bankruptcy Court on the Gordons' motion to file a new claim. The Court addressed this issue in its Memorandum of Opinion affirming the Bankruptcy Court's order:

> Appellants argue that the Bankruptcy Court abused its discretion in denying appellants' Motion to File New Claim because the Bankruptcy Court did not articulate its reasoning for the denial. Upon review, the Court finds that appellants are blatantly mischaracterizing the record. The transcript of the May 12, 2009 hearing during which the Bankruptcy Court considered appellants' Motion to File New Claim shows that the Bankruptcy Court explained that its reason for denying the motion was that the so-called "new claim" was not a new claim, but only a different theory of recovery on the original $1 million transaction:
>
> > THE COURT: Mr. Grossman, your clients are seeking the return of funds or a dividend based upon the return of funds. Your clients are seeking a dividend in this case based upon monies that changed hands in June of 2000, circumstances of which are the central issue in this case. The request to file a, quote, new claim, why is it necessary? You have been given great latitude in terms of advancing various theories in support of your client's desire to participate as general unsecured creditors in this case. I have indicated that while the issue of timeliness of your client's response to the objection is still an issue in this case, it's a dormant issue but it is an issue. Why– why should I

|  |  |
|---|---|
|  | change that dynamic? I am allowing you to advance whatever theories you're going to advance but why is that not appropriate under– as you go forward under the claim that was filed by your client with respect to monies advanced, monies that changed hands in June of 2000? That's still what we're talking about correct? |
| MR. GROSSMAN: | Yes. The reason why, Your Honor, is because the standard for a new claim versus amended claims is is there anything in the document or the underlying claim or the documents on which the underlying claim was filed which gives a reasonable indication as to the basis for what might be termed a new or amended claim. If it's based on the same document or if there's something in that original document which would give the parties reasonable notice of a basis for yet a further claim, that's what's deemed to be an amended claim. On the other hand, if there's nothing whatsoever in the original claim documents which gives any indication or foreseeability of a basis for a new theory or a new basis for a claim, then it's a new claim. It's not an amended claim. And there's no doubt here that there's absolutely nothing in the underlying document that Ms. Gordon filed back in June 2008 as the original claim which would even begin to give any indication of forgeries or Dani family operating agreements or the terms of those agreements. |
| THE COURT: | Mr. Grossman, is it your contention that your client would be entitled to, if both claims were allowed, that your client would be entitled to a double distribution? |
| MR. GROSSMAN: | Absolutely not. Indeed, under-- |
| THE COURT: | So it's a single claim? |

> MR. GROSSMAN: It's a single claim. We have committed from the outset that because of the issue of reliance and in order to eliminate any argument of prejudice to anybody, we have committed throughout that under no circumstances will we seek as a claim any amount in excess of the dollar value of the original claim figure filed by Ms. Gordon timely back in June 2008.

(May 12, 2009 Transcript (hereinafter "Tr.") 58:9-60:14). The Bankruptcy Court then turned to counsel for the trustee, who responds that the operating agreements are irrelevant, and even if the operating agreements were relevant appellants as equity holders would be subordinated to general unsecured creditors. The Bankruptcy Court allowed counsel for appellants to respond:

> MR. GROSSMAN: Right. That does not apply to our unjust enrichment claim. The March 17th motion is to add a new claim based upon theories of rescission. And the reason we're asserting rescission is because rescission logically comes first. Given the fact that the forgeries and given the concealments that occurred, and it seems to be undisputed because there's no contrary evidence. But given all that, logically the rescission claim goes forward, because the Ohio legal rate of interest is lower than the contract rate of interest, actually, the amount of the Gordon claim is reduced. Gertrude Gordon filed her original claim for $2.1 million. The rescission claim, based on rescission of the loan, instead of being 2.1 is approximately $1.7 million.
>
> THE COURT: It's a different theory in support of your client's desire to participate in this case based upon the two– based upon the money that changed hands in the summer of 2000; is that correct?
>
> MR. GORDON: It's not– it's a different theory, but in addition to that, it's a whole different set of documents and a different set of circumstances, none of which could have

7

>>been foreseen from the underlying documents which were part of the original claim. It was a totally surprise matter to everyone when those operating agreements were produced and the forgeries were revealed . . . .

(Tr. 62:16-63:2.) After hearing from the trustee's counsel a final time, the Bankruptcy Court stated:

>>THE COURT: Well, the Court is going to deny the motion to allow the filing of a new claim. The development of whatever rights the Gordons may have to participate as creditors, whatever else, they are not being denied due process. They're getting a lot of process. And so we will proceed with their rights and with whatever facts have been developed in discovery but there will not be a claim other than the claim that was filed in June of 2008 that will be addressed. The various theories can be addressed but there will not be a separate claim.

(Tr. 64:5-15.) Further, the Bankruptcy Court reiterated later in the hearing that no new claim existed: "In reviewing the papers that have been filed by Mr. Grossman on [appellants'] behalf I have yet to see a theory that doesn't trace back to the original exchange of funds that occurred in the summer of 2000." (Tr. 66:14-18.) The Court finds it inconceivable that appellants would characterize such a detailed discussion as a "summary denial" and would seriously argue that the "sole substance" of the Bankruptcy Court's May 19, 2009 order was the single word "denied," when the above discussion took place on the record at the May 12 hearing. The Court finds that the Bankruptcy Court properly articulated the basis for its order denying appellants' Motion to File New Claim.

(No. 5:09 CV 1506, Doc. 26.) Despite the long exchange between Grossman and the Bankruptcy Court reproduced herein, Grossman stated that the Bankruptcy Court's denial of the Gordon's motion was "summary," "without explanation or justification," and consisted of only the word "denied" throughout the Gordons' briefs on their first appeal.

Grossman now contends that these factual misstatements were "in good faith," "a single

8

error," and that the Court should not deny his motion based on this issue.  His contention is unsupported.  Grossman was indisputably present at the May 12 hearing when the Bankruptcy Court explained its basis for denying the Gordons' motion.  Appellee, in his response to the Gordons' brief on their first appeal, pointed out the portions of the Bankruptcy Court's transcript of the May 12 hearing that explained its reason for denying the motion yet Grossman continued to maintain in the Gordons' reply brief that "the Bankruptcy Court never explained the grounds for its denial of the  Gordons's [sic] new-claim motion."  He now asks this Court to accept his explanation that this "error" was in good faith– without providing the Court any explanation of the good-faith basis for the alleged "error."  The Court cannot conclude that Grossman's factual misstatements were in "good faith," and finds that his conduct surrounding this issue rises to the level of a violation of the Ohio Rules of Professional Conduct Rule 3.3(a)(1).  Grossman argues that appellee has waived this ground for denying admission *pro hac vice* because the brief at issue was filed prior to Grossman's *pro hac vice* motion in the first appeal, which was unopposed.  Grossman, however, cites no law in support of his waiver argument and the Court thus finds the waiver argument to be meritless.

Grossman's disrespectful treatment of the Bankruptcy Court in this case also violates the Ohio Rules of Professional Conduct Preamble Section 5[3] and Rule 3.5(a)(6).[4]  Grossman, in his

---

[3] Ohio Rules of Prof'l Conduct Preamble § 5:  "Lawyers play a vital role in the preservation of society. A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjustified criticism. Although a lawyer, as a citizen, has a right to criticize such officials, the lawyer should do so with restraint and avoid intemperate statements that tend to lessen public

9

motion to disqualify, has accused the Bankruptcy Court of the following:  having a vested interest in ruling against the Gordons to validate a "hasty and improper approval of a deceptive disclosure statement filed by [the Bankruptcy Court's] appointee attorney"; approving a "deceptive disclosure statement without checking its figures and without giving interested parties adequate time to check its erroneous figures"; having "an interest in disparaging the Gordons, their claim and their counsel as much as possible"; "wrongfully prejudg[ing] the credibility and character of the Gordons and their counsel"; "wrongfully prejudg[ing] the alleged character and professionalism of trustee's attorney Marc Merklin (whom Her Honor appointed) where attorney Merklin's unclean hands is a material issue"; and having a local bias.[5]  Grossman claims that these accusations are in support of the standard for judicial disqualification, which requires neither actual bias nor questioning of a judge's character or impartiality but depends only on the

---

confidence in the legal system. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

    [4]     Ohio Rules of Prof'l Conduct R. 3.5 describes a lawyer's duties with respect to the impartiality and decorum of the tribunal.  R. 3.5(a)(6) states "(a) A lawyer shall not do any of the following:  (6) engage in undignified or discourteous conduct that is degrading to a *tribunal*. (emphasis in original).

    [5]     This is not the extent of Grossman's disrespectful treatment impugning the decorum and impartiality of the Bankruptcy Court.  In the Gordons' response to appellee's notice of supplemental authority filed in the Gordons' first appeal, Grossman accuses the Bankruptcy Court of mischaracterizing its own previous statements to the Gordons' detriment because it is "busy and overworked" and is "inundated and overwhelmed" with new cases. (Case No. 5:09 CV 1506, Doc. 22.)  In the motion presently before the Court, Grossman states that "[t]here is overwhelming record support for the Gordons's claim which the Bankruptcy Court simply chose to ignore."  Additionally, the Bankruptcy Court warned Grossman at the May 12, 2009 hearing that he was "in the top ten percent of the most contentious counsel I have ever encountered." (Tr. 80:3-5.)  Finally, the Bankruptcy Court itself invited appellee to file the motion for sanctions that is now pending before the Bankruptcy Court.

appearance of partiality to a reasonable observer.  Thus, Grossman claims, such accusations are not personal attacks but merely what a reasonable person could observe.

The Court agrees with appellee, however, that these accusations are intemperate and degrading– Grossman is essentially accusing the Bankruptcy Court of maintaining a vendetta against him and his clients for the purpose of covering up wrongdoing by the trustee's attorney.  Such statements do not represent what a reasonable person could observe, but attribute an improper motive to the Bankruptcy Court's decisions.  Moreover, Grossman's suggestion that no judge in the Northern District of Ohio is capable of impartially ruling on the pending motion for sanctions[6] is completely unwarranted and unsupported.

The Court finds that compelling evidence exists to show that Grossman has engaged in unethical behavior in the Northern District of Ohio, and thus finds it unnecessary to address whether Grossman's pursuit of the Gordons' first appeal violated the Ohio Rules of Professional Conduct.  As the Supreme Court observed:

> On the one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise.  The right to exercise it ought not to be lightly or capriciously taken from him.  On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved.

*Ex parte Burr,* 22 U.S. 529, 530 (1824).  In conducting himself as set forth above, Grossman is both jeopardizing the respectability of the bar and its harmony with the bench.  Accordingly,

---

[6] The Gordons' motion for disqualification states:  "Judge Shea-Stonum should be disqualified in the sanctions proceeding.  Since Judge Shea-Stonum is the Chief Judge in this District, the Sixth Circuit Judicial Council should assign a new Judge from outside this District and before whom neither side's counsel has appeared in the past."

Grossman's motion to grant admission *pro hac vice* is denied.

**B.      Motion for Sanctions Against Dennis Grossman in Case No. 5:09 CV 1506**

Appellee argues that sanctions should be awarded against Grossman because the Gordons' first appeal was frivolous and in bad faith.  Specifically, appellee argues that the Gordons filed their first appeal before the Bankruptcy Court's order was final and appealable; their briefs misstated the Bankruptcy Court's record; Grossman advanced a legal theory contrary to established law with respect to the legal obligations arising out of the agreement; and the Gordons appealed the Bankruptcy Court's order denying their motion to file a new claim when they were given the right to present their new-claim theories at the evidentiary hearing on their original claim.  Appellee further argues that Grossman has been repeatedly cautioned about the possibility of sanctions in the Bankruptcy Court.

Upon review, the Court finds that monetary sanctions are unwarranted.  While the Gordons' first appeal is an example of overzealous advocacy given that the Bankruptcy Court indicated it would hear new-claim theories at the evidentiary hearing on the original claim, the Court finds that it does not rise to the level of being truly frivolous.  Because the order from which the Gordons appealed became final during the pendency of the appeal, the appeal was properly before this Court.  Additionally, appellee's statement that "this Court determined that the Agreement was a personal obligation of the Schwartz's, and not an obligation of Dani/Darlington" is simply incorrect.  Appellee is referring to the Court's factual findings as to who signed the agreement at issue.  The Court made no findings with respect to obligations arising out of the agreement, as the Bankruptcy Court had not yet ruled on allowing the Gordon's original claim.  That issue was thus not before the Court on the first appeal.  Moreover,

any instances of misconduct for which the Bankruptcy Court warned Grossman about the possibility of sanctions are properly dealt with by the Bankruptcy Court's resolution of the motion for sanctions against Grossman pending before it.

The Court agrees with appellee that Grossman's misstatements of the Bankruptcy Court's record in the Gordons' briefs are serious, however, the Court's denial of Grossman's motion for admission *pro hac vice* is a sufficient sanction for that misconduct.  Accordingly, appellee's motion for sanctions is denied.

### **CONCLUSION**

For the foregoing reasons, Grossman's Cross Motion to Grant *Pro Hac Vice* Admission is DENIED and appellee's Motion for Sanctions Pursuant to Fed. R. Bankr. P. 8020, 28 U.S.C. § 1927 and Court's Inherent Power Against Dennis Grossman is DENIED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/17/09